# No. 15-1608

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

### SOLERS, INC.,

**Plaintiff-Appellant**

v.

### INTERNAL REVENUE SERVICE,

**Defendant-Appellee**

_____

## ON APPEAL FROM THE JUDGMENT OF THE
## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

_____

## BRIEF FOR THE APPELLEE

_____

CAROLINE D. CIRAOLO
  *Acting Assistant Attorney General*

JONATHAN S. COHEN          **(202) 514-2970**
GRETCHEN M. WOLFINGER      **(202) 616-7611**
  *Attorneys, Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*


*Of Counsel:*


**Dana Boente**
  *United States Attorney*

13028254.1

-i-

# TABLE OF CONTENTS

**Page**

Table of contents ............................................................................i

Table of authorities ......................................................................iv

Statement of jurisdiction...............................................................1

Statement of the issue...................................................................2

Statement of the case ...................................................................3

    A.    Procedural history...................................................3

    B.    Relevant facts.........................................................4

        1.    The administrative proceedings ..................4

        2.    The District Court proceedings....................6

            a.    The summary judgment motions......................10

            b.    The District Court's decision .............................14

Summary of Argument...............................................................16

Argument:

    The District Court correctly determined that the IRS properly had withheld the pages pursuant to the claimed exemptions.......................................................................21

        Standard of review ...............................................21

    A.    The FOIA in general ...........................................22

    B.    The District Court correctly determined that the 10 pages in issue properly were withheld by the IRS..............24

        1.    Handwritten notes (4 pages), withheld in full pursuant to Exemption 5 ..........................................25

            a.    The notes.......................................................25

**Page**

     b.    Exemption 5 – deliberative process privilege.....26

     c.    The revenue agent's notes properly were
         withheld in full.................................................28

2.    Activity record/communication between the
    revenue agent and the IRS Chief Counsel (1
    page), withheld in part pursuant to Exemption 5.......31

     a.    The activity record/communication ....................31

     b.    Exemption 5 – attorney-client privilege.............31

     c.    The activity record was properly redacted.........32

3.    Graph (1 page) withheld in full pursuant to
    Exemption 3 in conjunction with I.R.C. § 6103(a),
    Exemption 5, Exemption 6 and Exemption 7(C).........34

    The summary report (1 page) withheld in full
    pursuant to Exemption 3, in conjunction with
    I.R.C. § 6103(a), and Exemption 5...............................34

     a.    The graph ...........................................................34

     b.    The report...........................................................35

     c.    Exemption 3 .......................................................35

     d.    The graph and the summary report properly
         were withheld in full..........................................36

4.    E-mails containing names and contact
    information of IRS personnel (2 pages), withheld
    in part pursuant to Exemptions 6 and 7(C) ...............39

-iii-

**Page**

The checklist containing names of third-party taxpayers used by the revenue agent (1 page), withheld in part pursuant to Exemption 3, in conjunction with IRC § 6103(a), and Exemptions 6 and 7(C) ................................................................. 39

a.  The e-mails ................................................. 39

b.  The checklist ............................................. 39

c.  Exemptions 6 and 7(C) ................................ 40

d.  The e-mails properly were redacted pursuant to Exemptions 6 and 7(C) ................. 41

e.  The checklist properly was redacted pursuant to Exemptions 3, 6 and 7(C) ............. 45

Conclusion ................................................................. 45
Statement regarding oral argument .................................... 46
Certificate of compliance ................................................ 47
Certificate of service .................................................... 48

-iv-

# TABLE OF AUTHORITIES

**Cases:**

*American Management Services, LLC v. Department of the
     Army,*
          703 F.3d 724 (4th Cir. 2013) .................................................. 23

*Batton v. Evers,*
          598 F.3d 169 (5th Cir. 2010) .................................................. 37

*Carter, Fullerton & Hayes LLC v. FTC,*
          520 F. Supp. 2d 134 (D.D.C. 2007) ....................................... 29

*Casa de Maryland, Inc. v. United States Department of Homeland
     Security,*
          409 Fed. Appx. 697 (4th Cir. 2011) ................................ 40, 41

*Chaudhry v. Gallerizzo,*
          174 F.3d 394 (4th Cir. 1999) .................................................. 33

*City of Virginia Beach, Virginia v. Department of Commerce,*
          995 F.2d 1247 (4th Cir. 1993) .................................. 27, 28, 30

*Department of the Air Force v. Rose,*
          425 U.S. 352 (1976) ............................................................... 22

*Dobronski v. FCC,*
          17 F.3d 275 (9th Cir. 1994) ................................................... 43

*Ethyl Corp. v. United States EPA,*
          25 F.3d (4th Cir. 1994) .......................................................... 22

*Hull v. IRS, United States Department of the Treasury,*
          656 F.3d 1174 (10th Cir. 2011) ............................................. 38

*In re Grand Jury Subpoena,*
          341 F.3d 331 (4th Cir. 2003) .................................................. 33

*Judicial Watch v. United States,*
          84 Fed. Appx. 335 (4th Cir. 2004) ............................. 19, 41-43

*Larson v. Department of State,*
          565 F.3d 857 (D.C. Cir. 2009) ......................................... 22, 23

*Mason v. Callaway,*
          554 F.2d 129 (4th Cir. 1977) ................................................. 36

*Maydak v. United States Department of Justice,*
          218 F.3d 760 (D.C. Cir. 2000) ............................................... 13

*NLRB v. Sears, Roebuck & Co.,*
          421 U.S. 132 (1975) ......................................................... 27, 28

13028254.1

**Cases (cont'd):**                                                        **Page(s)**

*Rein v. United States Patent & Trademark Office,*
  553 F.3d 353 (4th Cir. 2009) ....................23-24, 27-28, 30-32

*Simmons v. United States Department of Justice,*
  796 F.2d 709 (4th Cir. 1986) ................................................22

*Spannaus v. Department of Justice,*
  813 F.2d 1285 (4th Cir. 1987) ..............................................23

*Strassman v. United States Department of Justice,*
  792 F.2d 1267 (4th Cir. 1986) ..............................................22

*Tax Analysts v. IRS,*
  410 F.3d 715 (D.C. Cir. 2005) .............................................36

*United States Department of Justice v. Reporters Committee
for Freedom of the Press,*
  489 U.S. 749 (1989) ....................................................40, 41

*United States v. Cardenas,*
  135 Fed. Appx. 688 (5th Cir. 2005) .....................................29

*United States v. Crisp,*
  190 F.R.D. 546 (E.D. Cal. 1999) .........................................29

*Vaughn v. Rosen,*
  484 F.2d 820 (D.C. Cir. 1973) ............................3, 16, 24, 37

*Vosburgh v. IRS,*
  1994 WL 564699 (D. Or. 1994) ...........................................43

**Statutes:**

5 U.S.C.:

  § 552 ...................................................................1-2
  § 552(a)(4)(B) ....................................................2, 23
  § 552(b) ........................................................5, 23, 35
  § 552(b)(3).................. 6, 8-9, 11, 14, 16, 18, 34-36, 38, 39, 45
  § 552(b)(5).....................8, 9, 11, 15, 17, 18, 26-28, 31, 34, 38
  § 552(b)(6)............... 9-11, 13, 14, 16, 19, 21, 34, 38-41, 44, 45
  § 552(b)(7)(C) ........... 9-11, 13, 14, 16, 19-21, 34, 38-41, 44, 45

**Statutues (cont'd):**                                                      **Page(s)**

Internal Revenue Code (26 U.S.C.):

§ 6103.................................. 11, 15-16, 18-19, 21, 25, 36-38, 45
§ 6103(a) ....................................................... 8-10, 34, 36, 39
§ 6103(b)(2)(A) ...................................................... 36

28 U.S.C.:

§ 1331.................................................................... 2
§ 1291.................................................................... 2

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ................................................ 2

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

―――――――――――――

**No. 15-1608**

**SOLERS, INC.,**

**Plaintiff-Appellant**

**v.**

**INTERNAL REVENUE SERVICE,**

**Defendant-Appellee**

―――――――――――――

**ON APPEAL FROM THE JUDGMENT OF THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

―――――――――――――

**BRIEF FOR THE APPELLEE**

―――――――――――――

**STATEMENT OF JURISDICTION**

In November 2014, appellant Solers, Inc. (Solers) filed a complaint
against the Internal Revenue Service (IRS) in the United States District
Court for the Eastern District of Virginia.  (JA 6-11.)[1]  In the complaint,
brought pursuant to the Freedom of Information Act (FOIA), 5 U.S.C.

―――――――――――――

[1] "Br." references are to appellant's brief.  "Doc." references are to
documents on the docket of the District Clerk as numbered by the Clerk
of that court.  "JA" references are to the joint appendix.  "SA" references

(continued…)

-2-

§ 552, Solers sought the production of withheld records, as well as attorney's fees and costs.  (JA 10.)  Jurisdiction was conferred on the District Court by 28 U.S.C § 1331 and 5 U.S.C. § 552(a)(4)(B).

On May 15, 2015, after ruling from the bench (JA 112-18), the District Court entered an order granting the IRS's motion for summary judgment and denying Solers's cross-motion for summary judgment. (JA 119.)  Judgment for the IRS was entered that same day.  (JA 120.) The judgment is final and appealable, and disposes of all claims of all parties.

On June 2, 2015, Solers filed a timely notice of appeal.  Fed. R. App. P. 4(a)(1)(B).  (JA 121-22.)  This Court has jurisdiction to entertain this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether, in this Freedom of Information Act case, the District Court correctly determined that the IRS had properly withheld the

---

are to the supplemental appendix filed ex parte and under seal by the IRS.  References to the hearing transcript cite to both the page and line numbers.

13028254.1

records at issue, and therefore properly granted the IRS's motion for summary judgment.

## STATEMENT OF THE CASE

### A.    Procedural history

In November 2014, Solers filed a complaint, pursuant to the FOIA, against the IRS in the District Court seeking the production of records that the IRS had withheld, in whole or in part.  (JA 6-11.)  The IRS filed an answer to the complaint.  (JA 15-19.)

Solers filed a motion to obtain a *Vaughn* index (*see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)) (Doc. 12), the IRS filed an opposition (Doc. 14), and Solers filed a response (Doc. 15.)  The District Court, through Magistrate Judge Anderson, granted Solers's motion in part, ordering that for documents withheld in full or partially redacted, the IRS was required to provide all information required in a *Vaughn* index, together with its summary judgment motion.  (JA 20.)

In March 2015, the IRS filed its summary judgment motion. (JA 21-69; *see also* Doc. 20.)  Solers opposed the motion, and cross-moved for summary judgment.  (Doc. 23; *see also* JA 70-81.)  The IRS filed a combined reply to Solers's opposition, and an opposition to

-4-

Solers's cross-motion. (Doc. 24; *see also* JA 82-99.) Solers filed a reply to the IRS's opposition. (Doc. 25; *see also* JA 100-07.) Following the filing of the summary judgment motions, the District Court ordered the IRS to file under seal, for the court's *in camera* review, the 12 pages it had withheld in whole or in part (JA 108), which the IRS did (JA 109-111; *see also* SA).

In May 2015, the District Court held a hearing on the motions. (JA 112-18; *see also* Doc. 31.) Ruling from the bench, the District Court granted the IRS's motion for summary judgment, and denied Solers's cross-motion for summary judgment. (*See* JA 117-18.) An order memorializing the oral decision and a judgment in favor of the IRS were entered on the same day. (JA 119, 120.)

Solers now appeals.

**B.    Relevant facts**

**1.    The administrative proceedings**

"Solers is an information technology solutions provider for the federal and commercial sectors." (JA 6, ¶ 1.) It was the subject of a civil examination (audit) for the tax year 2010. (*See* JA 7, ¶¶ 5-6.) In May 2014, Solers submitted a FOIA request to the IRS for all documents in the IRS's administrative file pertaining to its tax

13028254.1

liabilities and potential assessed penalties for that tax year, specifically the Form 1120 audit, the Notice of Proposed Adjustment (NOPA), the response to the NOPA, and the protest of the Proposed Adjustment. (*Id.*; *see also* JA 37-39; JA 28-29, ¶ 3.)

Solers's FOIA request was assigned to IRS Senior Disclosure Specialist Cecilia Dorsey (Dorsey). (JA 24, ¶ 1; JA 25, ¶ 5.) Dorsey conducted a search using the IRS's Integrated Data Retrieval System, which is an electronic system consisting of databases and operating programs that support IRS employees working active tax cases. (JA 25-26, ¶¶ 6-7.) After concluding her search, Dorsey contacted the IRS agent conducting the Solers's audit, and requested access to the administrative file. (JA 26, ¶ 7.)

When Dorsey received the administrative file, she determined that 261 pages from that file were responsive to the FOIA request. (JA 26-27, ¶ 9; JA 27, ¶ 11.) Following her review, the IRS in June released the documents to Solers, but withheld 32 pages in part and 26 pages in full, pursuant to various FOIA exemptions.[2] (JA 27, ¶ 11; *see also*

---

[2] The FOIA exemptions are codified at 5 U.S.C. § 552(b). In this brief, we refer to FOIA exemptions by their section number in that

(continued…)

JA 40-41.)

Solers administratively appealed that decision with the IRS. (JA 8, ¶ 10; *see also* JA 42-44.)  It claimed (i) that the IRS had improperly applied one exemption (7(A) (law enforcement purposes)); (ii) that its determination failed to provide the required specificity to support the claimed exemption; and (iii) that it had failed to provide responsive internal IRS correspondence.  (JA 8 ¶ 11; JA 42-44.)  The IRS denied the appeal.  (JA 8, ¶ 12; *see also* JA 51-54.)

## 2. The District Court proceedings

In its complaint, Solers sought the production of the withheld records, claiming that the IRS had improperly relied on exemptions to withhold the documents.  (JA 9, ¶¶ 18-19.)  It requested, *inter alia*, the production of the documents, and attorney's fees and costs.  (JA 10.)

Following the filing of the complaint, the IRS assigned Joseph Maher (Maher), an IRS docket attorney in the Office of the Associate Chief Counsel, to assist in the response to the complaint.  (JA 28, ¶ 1; JA 29, ¶ 8.)  Maher requested from Dorsey copies of her administrative

statute.  For example, the FOIA exemption codified at 5 U.S.C. § 552(b)(3) is referred to herein as "Exemption 3."

file and of the documents responsive to Solers's FOIA request.  (JA 29-30, ¶ 8.)

During Maher's review of the documents, he determined that an additional 29 pages, previously withheld in part, could be released in full to Solers.  He further determined that 17 pages previously withheld in full also could be released to Solers in full, and that 3 pages previously withheld in full could be released in part.  (JA 30, ¶ 11; JA 83, ¶ 6.)

In addition, Maher stated that he was aware of the FOIA's segregation requirement.  (JA 30-31, ¶ 12; JA 83, ¶ 7.)  He had carefully read all the documents that were withheld, and had "attempted to make every reasonably segregable non-exempt portion of every responsive document available" to Solers.  (*Id.*)  He therefore determined that the IRS was "withholding in their entirety only those documents that fall entirely within a FOIA exemption of those documents wherein the portions exempt from disclosure under the FOIA are so inextricably intertwined with nonexempt material as to be non-segregable."  (*Id.*)

At the conclusion of Maher's review, only 10 pages remained at issue; 6 were withheld in full, and 4 were withheld in part.  (JA 30,

¶ 11.)[3]  These pages, as described below, were withheld pursuant to the

noted exemptions:

### Pages withheld in full:

1.  Handwritten notes (SA 11-14) prepared by the revenue
    agent in the course of Solers's examination (4 pages) (JA 33-
    34, ¶¶ 20-21)

    > These pages were withheld under Exemption 5 (inter-
    > agency or intra-agency records that would not be
    > available by law to a party other than an agency in
    > litigation with the IRS) as information protected by the
    > deliberative process privilege

2.  Summary report (SA 15) of the revenue agent discussing
    third-party return information (1 page)  (JA 31-32, ¶¶ 14-17;
    JA 33-34, ¶¶ 20-21; JA 90-92, ¶¶ 23-26)

    > This page was withheld under Exemption 3 (disclosure
    > specifically exempted by another statute), in connection
    > with Internal Revenue Code (I.R.C.) (26 U.S.C.)
    > § 6103(a); Exemption 5 (inter-agency or intra-agency
    > records that would not be available by law to a party

_____

[3] In fact, 12 pages originally remained at issue.  (JA 30, ¶ 11.)
The IRS withheld 2 pages in part because they contained a
Discriminant Information Function (DIF) score.  (JA 35, ¶ 24.)  During
the course of the District Court litigation, Solers conceded that the IRS
properly had withheld these documents in part (*see* Doc. 23 at 2 n.1; *see
also* JA 114: 4-8), and accordingly does not discuss them here.  The
District Court confirmed that the IRS redactions on these 2 pages were
of DIF scores.  (JA 114: 8-10.)  These documents therefore are not
discussed in this brief, and are not included in the supplemental
appendix.

-9-

other than an agency in litigation with the IRS) as information protected by the deliberative process privilege; Exemption 6 (personal privacy); and Exemption 7(C) (law enforcement records implicating personal privacy)

3.  Graph (SA 20) created by the revenue agent that contains third-party return information (1 page) (JA 31-32, ¶ 14-17; JA 33-34, ¶¶ 20-21; JA 34-35, ¶¶ 22-23)

> This page was withheld under Exemption 3 (disclosure specifically exempted by another statute), in connection with Internal Revenue Code (I.R.C.) (26 U.S.C.) § 6103(a); Exemption 5 (inter-agency or intra-agency records that would not be available by law to a party other than an agency in litigation with the IRS) as information protected by the deliberative process privilege; Exemption 6 (personal privacy); and Exemption 7(C) (law enforcement records implicating personal privacy)

**Pages withheld in part:**

1.  Activity report/communication (SA 9, 19) between the revenue agent and the IRS Office of Chief Counsel (1 page) (JA 33-34, ¶¶ 20-21)

> This page was withheld under Exemption 5 (inter-agency or intra-agency records that would not be available by law to a party other than an agency in litigation with the IRS) as information protected by the attorney-client privilege

2.    E-mails (SA 6, 7, 16, 17) with names and contact information of IRS personnel consulted in connection with Solers's audit (2 pages) (JA 34-35; ¶¶ 22-23)

These pages were withheld under Exemption 6 (personal privacy); Exemption 7(C) (law enforcement records implicating personal privacy)

3.    Checklist (SA 8, 18) containing third-party return information (1 page) (JA 31-32, ¶¶ 14-17; JA 90-92, ¶¶ 23-26)

This page was withheld under Exemption 3 (disclosure specifically exempted by another statute), in connection with Internal Revenue Code (I.R.C.) (26 U.S.C.) § 6103(a); Exemption 6 (personal privacy); and Exemption 7(C) (law enforcement records implicating personal privacy)

Gregory Armstrong, a Senior Technical Reviewer and Maher's supervisor, also reviewed the documents at issue.  (JA 55-56, ¶¶ 1-2.)

### a.    The summary judgment motions

The IRS moved for summary judgment, supporting its motion with declarations from Dorsey, Maher, and Armstrong.  (JA 21-69; *see also* Doc. 20.)  The IRS contended that it properly had withheld the pages pursuant to the claimed exemptions.  (Doc. 20 at 7-16.)

The basis of Soler's opposition, and its cross-motion for summary judgment, was that the IRS had produced "generic and inadequate affidavits" that did not support its reliance on the claimed exemptions.

(Doc. 23 at 9.)  Solers maintained that the affidavits should provide such information as the date the document was created, the author's name, the subject of the document, and the recipients of the document. (*Id.* at 9-10; 11; 14.)  As to the pages withheld in full, Solers maintained that the IRS had not explained why the pages were not segregable.  (*Id.* at 10, 12.)

Solers also had specific objections to the exemptions asserted by the IRS.  With regard to Exemption 3, in conjunction with I.R.C. § 6103, it contended that the IRS should have disclosed the name of the third party taxpayer.  It maintained that the agency's failure to do so effectively prevented Solers from seeking the permission of the third party to release that information.  (Doc. 23 at 11.)  With regard to Exemption 5, and the deliberative process and attorney-client privileges, Solers maintained that the IRS had failed to establish that the pages were deliberative in nature, that they constituted an attorney-client communication, and that they were based on confidential information provided to the attorney.  (*Id.* at 14-15.)   With regard to Exemptions 6 and 7(C), Solers asserted that it was not seeking personal information such as addresses of third parties, but

sought the names of the agents reviewing its file, which allegedly would go to "the issue of the method and manner by which penalties may be imposed on Solers, the role of the decision makers, and the thoroughness" of the audit. Solers believed its interest in this information outweighed the "minimal" privacy interests asserted by the IRS. (*Id.* at 17.)

In response, the IRS contended that it properly had withheld the documents, and submitted a supplemental declaration from Maher. This declaration provided additional information about the withheld pages, including, *inter alia*, the name of the revenue agent or document author (JA 84-85 ¶ 10; JA 86-87, ¶ 15; JA 88-89, ¶ 19; JA 90, ¶ 22; JA 92-93, ¶ 27); the circumstances surrounding the creation, and the general subject matter, of the pages protected by the deliberative process and attorney-client privileges (JA 89-90, ¶ 20-21); and how the information pertained to a particular individual (JA 92-93 ¶¶ 26-27). With regard to the checklist, the declaration gave the title and description of the checklist. ((JA 85, ¶ 11.) The declaration also asserted two additional exemptions for the IRS's withholding of the

-13-

summary report and the checklist, *viz.,* Exemptions 6 and 7(C). (JA 90-92, ¶¶ 23-26.)

Solers raised several arguments in its reply. First, it challenged the IRS's belated reliance on Exemptions 6 and 7(C) with regard to the summary report and checklist. (Doc. 25 at 2.)[4] It also requested that the District Court conduct an *in camera* review of the documents. (*Id.* at 3-4, 11-12.) Next, Solers maintained that Maher's supplemental declaration did not establish that the activity report containing the communication by the revenue officer to the Office of Chief Counsel was a confidential communication, and that the summary report and the graph were neither pre-decisional nor deliberative. (Doc. 25 at 4-6.) Solers continued to assert that the IRS had not fully explained why the handwritten notes were not segregable, and also why the notes were deliberative. (*Id.* at 6-8.) Solers also argued that it was entitled to all pages that withheld third-party return information pursuant to

---

[4] An agency's belated reliance on an exemption is potentially problematic only when the exemption is not asserted in the original district court proceeding, which is not the situation here. *Maydak v. United States Department of Justice*, 218 F.3d 760, 764-65 (D.C. Cir. 2000).

-14-

Exemption 3, and submitted purported authorizations to release their return information from certain of Solers's officers and employees.  (*Id.* at 8-10.)  Lastly, Solers reiterated its argument that the IRS has asserted only "generic" privacy interests in support of its reliance on Exemptions 6 and 7(C).  (*Id.* at 10-11.)

### b.    The District Court's decision

On May 8, 2015, prior to the hearing on the cross-motions for summary judgment, the District Court ordered the IRS to produce the withheld documents for *in camera* inspection.  (JA 108.)  The IRS did so on May 11, 2015.  (JA 109-110; SA.)

The court held a hearing on the cross-motions for summary judgment on May 15, 2015.  (JA 112-18.)  The court initially noted that the case had been "extensively briefed" (JA 113: 13), and that it had "thoroughly reviewed" the documents submitted *in camera* (JA 113: 24).  The court ruled from the bench, granting the IRS's motion for summary judgment.  (*See* JA 117: 22-25.)

The court upheld the IRS's withholding of the summary report and the graph in full based on Exemption 3, in conjunction with I.R.C.

§ 6103.  The court stated that the documents contained identifying information of third-party taxpayers, and that the IRS's determination not to disclose those documents therefore was correct.  (JA 114:11-18.)

With regard to the handwritten notes, the court concluded that they were properly withheld in full, pursuant to Exemption 5.  (JA 114: 19 – JA 115: 8.)  The notes "represented the thought process" of the agent; "the key or salient points that that agent was writing down."  (JA 115: 3; JA 115: 4-5.)   They "reflect[ed] the mental processes of the revenue agent and thoughts on possible direction of the investigation." (JA 115:  6-8.)  The court to a degree conflated the activity report/communication with the notes, but upheld the redaction of the activity report (which the IRS had made pursuant to Exemption 5), because the page "reflect[ed] an area where the revenue agent sought relevant legal advice."  (JA 115: 8-9.)

Finally, the court upheld the redaction of the remaining three pages: the checklist, which contained the names of third-party taxpayers, and the two e-mails, which contained the names and contact information of IRS employees.  (JA 115: 11.)   Again, the court's ruling to some extent commingles the applicable exemptions, but its ruling

was nonetheless clear, stating that "the government employs

Exemptions 6 and 7(c) because the relevant documents contain again

identifying information of other individuals.  There are names of some

people."  (JA 115: 12-15; *see also* JA 115: 17-18 (referring to "privacy,"

an Exemption 6 and 7(C) concept).).)  Continuing, apparently with

regard to the checklist, which also was redacted pursuant to Exemption

3, the court stated that it was "the type of report, [Form] 1040, that was

being reviewed," indicating that it was § 6103 material that was

redacted.  (JA 115: 15-16; *see also* JA 115: 17 – JA 117:20 (following

ruling, discussion of authorization to release § 6103 material); SA 8, 20.)

## SUMMARY OF ARGUMENT

1.    There is no merit to Solers's assertions that the IRS's

declarations did not meet the requirements of a *Vaughn* index.  The

court's *in camera* review of the withheld material, which Solers

requested, cured any alleged defects in the IRS's *Vaughn* index.

Solers's argument that the trial judge did not make findings on a

number of issues fares no better.  These perceived deficiencies do not

alter the fact that the court reviewed the withheld pages *in camera*, and

weighed the IRS's reasons for non-disclosure against those advanced by

-17-

Solers.  To the extent that the court did not explicitly address a particular document or issue, its ruling implicitly accepted the IRS's bases for nondisclosure in holding that the pages properly were withheld.  Moreover, if and to the extent the court's ruling was unclear to Solers, it never asked the court during the hearing to explicitly address any of the deficiencies it now raises on appeal.

      2.    The District Court correctly determined that the 10 pages in issue properly were withheld by the IRS.

      a.    The handwritten notes properly were withheld in full pursuant to Exemption 5 of the FOIA, and the deliberative process privilege encompassed by that exemption.  The notes were deliberative and not "peripheral."  They were taken by the revenue agent, the first-line IRS employee responsible for conducting Solers's audit, and for recommending whether adjustments to Solers's tax liability should be made.  They were deliberative because, as the District Court put it, they "reflected the mental processes of the revenue agent and thoughts on possible direction of the investigation."  Solers argues that the notes were not deliberative because there was no showing that the notes related to the formulation of IRS policy.  The deliberative process

-18-

privilege, however, is not so narrowly confined; it also applies to agency "decisions," such as the determination whether a taxpayer has a tax liability.

b.    The activity record/communication between the revenue agent and the IRS Chief Counsel, in which the revenue agent requested legal advice, properly was redacted pursuant to Exemption 5 and the attorney-client privilege, because the redacted material fell squarely within that privilege.  Solers maintains that the subject-matter of an attorney-client communication, or a general description of the work performed, is not privileged.  The redacted material, however, identified a specific area of the examination as to which the revenue agent had concerns.  Further, the IRS asserted that the subject matter of the communication was confidential.

c.    The graph and the summary report properly were withheld in full pursuant to FOIA Exemption 3, in connection with I.R.C. § 6103; that exemption prohibits the disclosure of tax returns and return information, except as authorized by the Code.  The graph contained § 6103 material, *viz.*, the identity of third-party individuals and entities whose tax returns were considered in conjunction with the

-19-

Solers audit. It properly was withheld in full because the § 6103 material was not segregable.

In a similar vein, the summary report properly was withheld in full. The report discussed the returns and return information of third parties as relevant to the Solers audit, and it therefore represented return information in its entirety.

    d.    The e-mails containing the names and contact information of IRS personnel, and the checklist containing names of third-party taxpayers properly were withheld in part, pursuant to FOIA Exemptions 6 and 7(C). With regard to the e-mails, this Court has addressed this issue, at least with respect to the applicability of Exemption 6, in *Judicial Watch v. United States*, 84 Fed. Appx. 335 (4th Cir. 2004). In that case, this Court upheld the IRS's redaction of the names of lower-level employees from documents responsive to FOIA requests submitted by Judicial Watch, which had been the subject of an audit.

In this case, the IRS employees clearly have a privacy interest in their names and contact information, pursuant to Exemption 6. Further, to the extent that Solers requested information only about its

-20-

own audit, as opposed to general information about the IRS's audit or penalties policies, the employees might be subject to unwanted contact. And Solers's interest in how the IRS conducted its audit is not co-extensive with any public interest in the identity of those persons conducting that audit.[5]  In simplest terms, the disclosure of those individuals' names and contact information does not shed enough light on the way in which the IRS operates to outweigh the individuals' privacy interests.

For substantially similar reasons, the IRS properly withheld the names and contact information of the employees pursuant to FOIA Exemption 7(C).  If the balancing of interests justified withholding of the names and contact information pursuant to the more exacting privacy standard of Exemption 6, the IRS *a fortiori* properly withheld this information from disclosure pursuant to the less demanding privacy protection of Exemption 7(C).

---

[5] The IRS released to Solers the identity of Arun Sharma, the revenue agent conducting the audit, and his predecessor, Agent Dennis Cohen.

The IRS also properly withheld the names of third-party taxpayers on the checklist. Their identities were statutorily confidential return information, that clearly was non-disclosable under Exemption 3, in conjunction with I.R.C. § 6103, without regard to balancing privacy versus public interest that is necessary under Exemptions 6 and 7(C). But even assuming that such a balancing were relevant, the District Court correctly determined that their personal privacy interest outweighed public interest in their identities and so the IRS properly withheld their names pursuant to Exemptions 6 and 7(C).

The judgment of the District Court is correct and should be affirmed.

## ARGUMENT

### The District Court correctly determined that the IRS properly had withheld the pages pursuant to the claimed exemptions

### Standard of review

In reviewing a grant of summary judgment to the Government in a FOIA case, this court "must determine de novo whether, after taking all the evidence in the light most favorable to the non-movant, there remains no genuine issue of material fact and the government is

entitled to judgment as a matter of law." *Ethyl Corp. v. United States EPA*, 25 F.3d 1241, 1246 (4th Cir. 1994) (internal quotation marks and citations omitted).  Any factual conclusions that place a document within a stated FOIA exemption are reviewed under a clearly erroneous standard, but the question whether a document fits within one of the exemptions is one of law, as to which the District Court's ruling is reviewed de novo.  *Id.*

### A.    The FOIA in general

"The basic policy of the FOIA is disclosure, not secrecy, with limited exceptions." *Strassman v. United States Department of Justice*, 792 F.2d 1267, 1268 (4th Cir. 1986) (per curiam) (citing *Department of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  When an agency invokes an exception to disclosure, it bears the burden of establishing its entitlement to the exception.  *Id.*

An agency is permitted to establish the applicability of a claimed exemption by affidavit or declaration.  *Larson v. Department of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).  The affidavits must be relatively detailed and nonconclusory to support a FOIA exemption.  *See Simmons v. United States Department of Justice*, 796 F.2d 709 (4th Cir. 1986).

-23-

The justification for invoking an exemption "is sufficient if it appears logical or plausible." *Larson*, 565 F.3d at 862 (internal quotation marks and citation omitted). The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency. *American Management Services, LLC v. Department of the Army,* 703 F.3d 724, 733 (4th Cir. 2013); *Spannaus v. Department of Justice*, 813 F.2d 1285, 1289 (4th Cir. 1987); *see also* 5 U.S.C. § 552(a)(4)(B) ("[A] court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to ... subsection (b)," which enumerates the FOIA exemptions.).

With regard to nondisclosure, an agency cannot justify withholding an entire document simply by showing that it contains some exempt material. *See* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."). Instead, "non-exempt portions of documents must be disclosed unless they are 'inextricably intertwined' with exempt portions." *Rein v. United States Patent & Trademark Office*, 553 F.3d 353, 374 (4th Cir. 2009) (internal quotations and citation omitted).

-24-

### B.    The District Court correctly determined that the 10 pages in issue properly were withheld by the IRS

Solers repeatedly maintains that the IRS's declarations did not meet the requirements of a *Vaughn* index.  (*See* Br. 6, 11, 14-17, 20-22, 24, 26-27.)  But even assuming, *arguendo,* that the declarations were insufficient (and we maintain that they were not), this argument is irrelevant.  As Solers points out (Br. 16), an *in camera* review by the court is an appropriate alternative when a *Vaughn* index or declarations are inadequate.  *See also Rein*, 553 F.3d at 366 (agency can elect to provide *Vaughn* index in lieu of producing documents *in camera*.)  The District Court's *in camera* review of the material in dispute, which Solers had requested, cured any alleged defects in the IRS's declarations.

Solers also maintains that there are numerous deficiencies in the District Court's opinion, such as the court's alleged failure to make findings on a number of issues, including whether material was segregable (*see*, *e.g.,* Br. 8-9), and its alleged failure to address the redaction of the communication in the activity report (Br. 8).  But these perceived deficiencies do not alter the fact that the court reviewed the pages *in camera*, and evaluated the IRS's representations against

13028254.1

-25-

Solers's arguments for disclosure. To the extent that the court did not explicitly address a particular document or issue, it implicitly accepted the IRS's grounds for nondisclosure, including its segregability decisions, when it held that the pages properly were withheld.

Moreover, it was clear from early in the hearing (*see* JA 114), that the District Court intended to issue an oral ruling. To the extent the court's ruling was unclear to Solers, it never asked the court explicitly to address any of the deficiencies it now raises on appeal, including whether the notation in the activity report was protected by the attorney-client privilege, or whether any of the pages contained segregable information. Indeed, Solers knew that it could ask for clarification, as evidenced by the fact that it requested the court to address a matter concerning the disclosure of § 6103 material. (*See* JA 116.)

### 1. Handwritten notes (4 pages), withheld in full pursuant to Exemption 5

#### a. The notes

The notes (SA 11-14) consist of four handwritten pages of Revenue Agent Sharma taken during the course of Solers's audit. (JA 33-34,

¶¶ 20-21; JA 87-88, ¶¶ 16, 18.)  During an audit, a revenue agent is charged with the duty to ascertain the correctness of the taxpayer's return.  To do so, he must examine items on the return.  While examining Solers's return, Revenue Agent Sharma contacted Solers's certified public accountant on April 25, 2013, about the audit.  During that conversation, the revenue agent "took handwritten notes, consisting of his thoughts, impressions, and possible direction of the examination."  (JA 89, ¶ 20.)  At the time of the conversation, no decision was made with regard to the issues discussed by the revenue agent and the accountant.  The audit was not closed until almost a year later on March 4, 2014.  (*Id.*)  These pages thus were prepared in connection with Solers's audit, and preceded the decision whether to make certain adjustments to Solers's tax liability.  (JA 34, ¶ 21; JA 87-88, ¶¶ 16, 18.)  Further, Maher determined that the notes did not contain any segregable information.  (JA 30-31, ¶ 12; JA 89, ¶ 20.)

### b.    Exemption 5 – deliberative process privilege

The IRS withheld the notes pursuant to Exemption 5 and the deliberative process privilege.  Exemption 5 provides that the FOIA provisions are not applicable to matters that are "inter-agency or intra-

-27-

agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency . . . ." 5 U.S.C. § 552(b)(5). This exemption permits an agency to withhold information that would be privileged from discovery in civil litigation. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). The exemption "encompasses, inter alia, the deliberative process and attorney-client privileges." *Rein*, 553 F.3d at 366 (footnote omitted); *see also Sears*, 421 U.S. at 149, 150-54 (1975).

With regard to the deliberative process privilege, the agency must show that the documents are both predecisional and deliberative. *Rein,* 553 F.3d at 372; *City of Virginia Beach, Virginia v. Department of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993). "Predecisional documents are prepared in order to assist an agency decisionmaker in arriving at his decision." *City of Virginia Beach*, 995 F.2d at 1253 (internal quotations and citation omitted). "Deliberative material reflects the give-and take of the consultative process . . . by revealing the manner in which the agency evaluated possible alternative policies or outcomes." *Id*. (internal quotations and citation omitted); *see also Rein*, 553 F.3d at 372-73. Thus, "recommendations, draft documents,

proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" are encompassed by Exemption 5. *Id.* (internal quotations and citation omitted); *see also Sears*, 421 U.S. at 150 ("advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated" are included within the deliberative process privilege); *Rein*, 553 F.3d at 373. In withholding material, the agency is "not required to identify the specific policy judgment at issue . . . ." *Id.* at 373-74.

> ### c.    The revenue agent's notes properly were withheld in full

Solers argues that the notes were neither deliberative, in that they were perhaps "peripheral," and also because the IRS had not shown how the notes "related to the process by which agency policy was formulated," nor were they predecisional.  (Br. 20.)  Solers's argument lacks merit.

First, the IRS established that the notes were deliberative and not "peripheral."  As discussed above, they were taken by the revenue agent, the first-line IRS employee responsible for conducting Solers's audit and making a recommendation as to whether to make certain

-29-

adjustments to Solers's tax liability. *See United States v. Cardenas,* 135 Fed. Appx. 688, 690 (5th Cir. 2005) (per curiam) (revenue agent's duties included decision-making authority with regard to collection of tax revenue); *see also United States v. Crisp,* 190 F.R.D. 546, 553 (E.D. Cal. 1999) (revenue agent's duties included performing audits, keeping records of audits, and deriving opinions based on her investigations).

Contrary to Solers's assertion that "[w]hether the notes . . . reflect the thought process of the agent is immaterial . . . ." (Br. 18), the notes were deliberative in that they reflected the revenue agent's personal evaluation of audit issues. Or, as the District Court put it, they "reflected the mental processes of the revenue agent and thoughts on possible direction of the investigation." (JA 115: 6-8; *see Carter, Fullerton & Hayes LLC v. FTC,* 520 F. Supp. 2d 134, 144 (D.D.C. 2007) (handwritten notes taken during a meeting with non-agency representatives were properly withheld under Exemption 5 because they represented employee's "'thoughts and impressions'" and were his opinion, rather than agency policy).)

Solers argues that the handwritten notes were not deliberative in nature because neither the IRS's declarations nor the court's ruling

-30-

demonstrated that the notes related to the formulation of IRS policy.
(Br. 20.) The deliberative process privilege, however, is not so narrowly
confined; it also applies to agency "decisions," such as the determination
whether a taxpayer has a tax liability. *City of Virginia Beach*, 995 F.2d
at 1253 ("Predecisional documents are prepared in order to assist an
agency decisionmaker in arriving at his decision.") (internal quotation
marks and citation omitted); *see also Rein*, 553 F.3d 353 (applying
Exemption 5 in context of award of patents and patent reexaminations).

The District Court also confirmed that the notes were
predecisional, in that they related to an ongoing audit. That audit was
not closed until almost a year after the notes were taken.

Finally, there is no basis for Solers to claim that non-exempt
material improperly was withheld. (Br. 20-22.) As noted above, the
District Court confirmed, as a result of its *in camera* review, the
correctness of the IRS's determination that the notes were not
segregable.

### 2. Activity record/communication between the revenue agent and the IRS Chief Counsel (1 page), withheld in part pursuant to Exemption 5

#### a. The activity record/communication

This is a single page from the revenue agent's activity record. (SA 9, 19.) The two-line redaction reflects a communication, on July 9, 2013, between Revenue Agent Sharma and the IRS Office of Chief Counsel. (*Cf.* Br. 22 (Solers claims the IRS "did not identify the parties to the communication.") The communication concerned specific issues arising in the course of the audit as to which the revenue agent sought legal advice. (JA 88, ¶ 16; JA 89-90 ¶ 21-22; *see also* JA 33-34, ¶¶ 20-21.)

#### b. Exemption 5 – attorney-client privilege

As noted above, Exemption 5 also encompasses the attorney-client privilege. In the context of this exemption, "[a]n agency can be a 'client' and agency lawyers can function as 'attorneys' within the relationship contemplated by the privilege." *Rein*, 553 F.3d at 376 (internal quotation marks and citation omitted). The privilege thus "extends to those communications between attorneys and all agents or employees of the organization who are authorized to act or speak for the organization in relation to the subject matter of the communication." *Id.* (internal

-32-

quotation marks and citation omitted). Finally, the agency must establish that the document is based on confidential information. *Id.*

### c. The activity record was properly redacted

The District Court in fact determined that the IRS properly withheld this document in part. (*Cf.* Solers's Br. 8, 22 ("the Court . . . inexplicably did not mention this particular document in its ruling.").) As the court stated, the segment of the document that was redacted related to a communication from the revenue agent seeking legal advice. (*See* JA 115: 8-9.) The redacted material thus fell squarely within the protection of the attorney-client privilege.

In arguing otherwise, Solers (citing several district court cases) maintains that the subject-matter of an attorney-client communication, or a general description of the work performed, is not privileged. (Br. 23.) But whatever the merits of this proposition might be in a particular factual context, the IRS did not redact information indicating that the revenue agent consulted with the Chief Counsel's Office about the audit generally. Rather, the redaction identified a specific area of the exam as to which the revenue agent had concerns, and as to which legal advice was requested. Such information is privileged. *See In re*

-33-

*Grand Jury Subpoena*, 341 F.3d 331, 335-36 (4th Cir. 2003) (the

government could ask if an individual consulted an attorney about an

immigration matter, but not whether he consulted with the attorney

about answering questions on an immigration form because "the

question impermissibly seeks disclosure of the specific nature of the

legal advice sought"); *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th

Cir. 1999) ("the specific nature of the services provided, such as

researching particular areas of law, fall within the privilege") (internal

quotation marks and citation omitted).

Solers also asserts that the IRS did not allege that the redacted

information was based upon confidential information provided to the

Chief Counsel's attorney.  (Br. 24.)  The IRS, however, stated that "the

very subject matter of this communication is confidential."  (JA 90,

¶ 21.)  And it is clear that the Solers audit was a non-public matter, and

the deliberations and recommendations of the revenue agent were

confidential until Solers was notified of the results of the audit.

3. **Graph (1 page) withheld in full pursuant to Exemption 3 in conjunction with I.R.C. § 6103(a), Exemption 5, Exemption 6 and Exemption 7(C)**

   **The summary report (1 page) withheld in full pursuant to Exemption 3, in conjunction with I.R.C. § 6103(a), and Exemption 5**

   a. **The graph**

This page (SA 20) was located in Solers's audit file.  (JA 84, ¶ 10.) It was created on July 30, 2012, by Revenue Agent Sharma.  It  was prepared in connection with, and for use during the course of, Solers's audit and preceded the decision whether to make adjustments to Solers's tax liability.  (JA 34, ¶ 21; JA 88-89, ¶¶ 18-19; JA 90, ¶ 22.) The graph was generated by the revenue agent from the IRS's yk-1 database, which stores information about which individuals and entities are related to each taxpayer.  It shows the identity of third-parties, some of which are individuals and some of which are entities, whose tax returns were considered in conjunction with Solers's audit.  (JA 31, ¶ 15; JA 84, ¶ 10; JA 91, ¶ 24; *see also* JA 32, ¶ 17 (contains "the names and other identifying details of third parties or constitute data prepared by Service personnel with respect to a taxpayer's liability under the Code.").)

### b.     The report

This page (SA 15) also was located in Solers's audit file.  (JA 84, ¶ 10.)  The summary report was typewritten by Revenue Agent Sharma on October 16, 2013.  (JA  31, ¶ 15; JA 84, ¶ 10.)  It describes the process and results of his review of tax returns of certain individual third-party taxpayers whose returns and return information were considered in conjunction with Solers's audit.  The report discusses information that pertains to the tax liabilities of these third parties.  (JA 33, ¶ 20; JA 84, ¶ 10; *see also* JA 32, ¶ 17 (contains "the names and other identifying details of third parties or constitute data prepared by Service personnel with respect to a taxpayer's liability under the Code.").)  The report preceded the decision whether to make certain adjustments to Solers's tax liability.  (JA 34, ¶ 21; JA 88-89, ¶¶ 18-19.)

### c.     Exemption 3

Exemption 3 protects from disclosure information which is:

> Specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).

-36-

Here, the nondisclosure statute is I.R.C. § 6103(a), which prohibits

the disclosure of tax returns and return information, except as

authorized by the Code. "Return information" is broadly defined as:

> a taxpayer's identity, the nature, source, or amount of
> his income, payments, receipts, deductions, exemptions,
> credits, assets, liabilities, net worth, tax liability, tax
> withheld, deficiencies, overassessments, or tax payments,
> whether the taxpayer's return was, is being, or will be
> examined or subject to other investigation or processing, or
> any other data, received by, recorded by, prepared by, or
> furnished to, or collected by the Secretary with respect to a
> return or with respect to the determination of the existence,
> or possible existence, of a liability (or the amount thereof) of
> any person under this title for any tax, penalty, interests,
> fine, forfeiture, or other imposition, or offense.

I.R.C. § 6103(b)(2)(A). "[T]hat Section 6103 is a statute contemplated

by FOIA Exemption 3 is beyond dispute." *Tax Analysts v. IRS*, 410 F.3d

715, 717 (D.C. Cir. 2005); *see also Mason v. Callaway,* 554 F.2d 129, 131

(4th Cir. 1977) (per curiam) (tax "returns" are specifically

nondisclosable pursuant to § 6103, and thus pursuant to Exemption 3).

### d. The graph and the summary report properly were withheld in full

As described above, the graph contained classic § 6103 material,

*viz.*, the identity of third-party individuals and entities whose tax

returns were considered in conjunction with the Solers audit. It

properly was withheld in full because the § 6103 material was not segregable.

The summary report also properly was withheld in full. The purpose of the summary report was to discuss the returns and return information of third parties as relevant to the Solers audit. Because the report represented return information in its entirety, the District Court correctly determined that the IRS properly had withheld it in full.

The opinion in *Batton v. Evers,* 598 F.3d 169 (5th Cir. 2010), cited by Solers as supporting its position (Br. 26), in fact bolsters the District Court's decision here. In that case, the Fifth Circuit found that the IRS's declarations "contain[ed] an insufficient description of the withheld documents from which we may conclude that Exemption 3 applies." *Id.* at 179. Consequently, "it was error [for the District Court] to sustain the withholding of these documents without more information in the form of a *Vaughn* index or in camera inspection." *Id.* at 180. We do not concede that the declarations here were deficient in terms of their description of the documents, but in any event, the District Court's *in camera* review provided the additional information, absent in *Batton,* as to the graph and summary report. The court

-38-

accordingly was able to conclude from its review that the IRS properly

had withheld the documents.

Solers's objection to the District Court's decision is that the IRS

failed to provide "any information or analysis" regarding the third-party

return information, and did not make a segregability determination.

(Br. 26-27.)  But, as discussed earlier, the District Court's *in camera*

review validated the representations made by the IRS as to Exemption

3 and segregability.  Moreover, for the court to have discussed the

material in more detail would have risked revealing protected § 6103

information.  (*See* JA 116: 17 – 117: 20; *see also Hull v. IRS, United*

*States Department of the Treasury*, 656 F.3d 1174, 1187-89 (10th Cir.

2011).)[6]

_____

[6] The IRS also withheld these pages pursuant to Exemption 5 and
the deliberative process privilege, Exemption 6 (personal privacy), and
Exemption 7(C) (law enforcement records implicating personal privacy).
The District Court explicitly addressed only Exemption 3 with regard to
these documents.  If this Court were to determine that the documents
were not properly withheld pursuant to Exemption 3, it would be
necessary to remand the case to the District Court for it to consider
whether other exemptions justified the non-disclosure of these pages.

4.    **E-mails containing names and contact information of IRS personnel (2 pages), withheld in part pursuant to Exemptions 6 and 7(C)**

**The checklist containing names of third-party taxpayers used by the revenue agent (1 page), withheld in part pursuant to Exemption 3, in conjunction with IRC § 6103(a), and Exemptions 6 and 7(C)**

a.    **The e-mails**

These two pages (SA 6, 7, 16, 17) contain the names and contact information of IRS personnel consulted in connection with Solers's audit.   (JA 35, ¶ 22.)  The pages are e-mails, dated July 12 and July 16, 2012, between Revenue Agent  Dennis Cohen, who worked on the Solers audit prior to Revenue Agent Sharma, and the IRS's Specialist Referral System (SRS).  (JA 35, ¶ 22; JA 91, ¶ 24; JA 93, ¶ 27.)

b.    **The checklist**

This page (SA 8, 18) is located in Solers's examination file.  (JA 84, ¶ 9; JA 85 ¶ 11; JA 86-87, ¶ 15.)  The checklist – "NRP [IRS's National Research Program] 1120 Group Manager Closed Case Review Checksheet" – is used before closing an audit.  (JA 85, ¶ 11.)  It is used by both the revenue agent and the agent's manager, and reflects the identity of third parties whose return information was considered in conjunction with Solers's audit.  (JA 31, ¶ 15; JA 85, ¶ 11, JA 86-87,

¶ 15; *see also* JA 32, ¶ 17 (contains "the names and other identifying details of third parties or constitute data prepared by Service personnel with respect to a taxpayer's liability under the Code.").)

### c.    Exemptions 6 and 7(C)

Exemption 6 is applicable to "matters that are personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy . . . ." 5 U.S.C. § 552(b)(6).  Exemption 7(C), which is the law enforcement counterpart to Exemption 6, is applicable to "matters that are records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . ." *Id.* § 552(b)(7)(C).

In determining whether either exemption is applicable, courts employ a balancing test that weighs the individual's privacy interests against the public interest in disclosure.  *United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 762 (1989); *Casa de Maryland, Inc. v. United States Department of Homeland Security,* 409 Fed. Appx. 697, 700 (4th Cir. 2011) (per

-41-

curiam).  Exemption 6's privacy protection, however, is narrower than
that of Exemption 7(C), in that to fall under Exemption 6 the invasion
of privacy must be *clearly* unwarranted to justify non-disclosure, a
requirement that is absent from Exemption 7(C).  *Reporters Committee*,
489 U.S. at 756; *Casa de Maryland*, 409 Fed. Appx. at 700.

### d.   The e-mails properly were redacted pursuant to Exemptions 6 and 7(C)

Solers does not dispute that the information consists of "personnel
and medical files and similar files" within the meaning of Exemption 6,
or "records or information compiled for law enforcement purposes"
within the meaning of Exemption 7(C).  Rather, it argues that the IRS
asserted only "generic privacy interests" in withholding this
information.  (Br. 29.)   Further, Solers maintains that the District
Court did not engage in a balancing test to determine whether the
employees' privacy interests outweighed Solers's interest in release of
the information, which was "the method and manner by which penalties
may be imposed on Solers, the role of the decision makers, and the
thoroughness of the Solers examination."  (Br. 30.)

This Court has addressed this issue, at least with respect to the
applicability of Exemption 6, in *Judicial Watch v. United States*, 84 Fed.

-42-

Appx. 335 (4th Cir. 2004). In that case, Judicial Watch, which had been the subject of an audit, *see id.* at 339, submitted a series of FOIA requests to the IRS seeking records relating to itself and its founder. *Id.* at 336. The IRS redacted the names of "'lower-level employees'." *Id.* at 338.

This Court affirmed the District Court's determination that the IRS properly had redacted this information pursuant to Exemption 6. In doing so, the Court weighed the employees' privacy interest against "the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* at 339 (internal quotation marks and citation omitted).

This Court also found that the employees had a privacy interest in not being "disturbed at home by work-related matters," and in controlling information about themselves. 84 Fed. Appx. at 339 (internal quotation marks and citation omitted). And Judicial Watch had offered no explanation as to how the disclosure of the employees' names "would reveal information about the government's operations." *Id.* Moreover, this Court stated that the public interest in the names of

-43-

government employees "would appear to be negligible absent a compelling allegation of agency corruption or illegality," which did not exist in that case. *Id.* (internal quotation marks and citation omitted). Thus, the "virtually nonexistent FOIA-related public interest in disclosure, which would be outweighed by even a very slight privacy interest," was outweighed by "the not insubstantial privacy interest at issue here." *Id.* (internal quotation marks and citation omitted).

In this case, the IRS employees clearly have a privacy interest in their names and contact information. And if the employees do not hold senior positions, their privacy interest is even stronger. *See Dobronski v. FCC*, 17 F.3d 275, 280, n.4 (9th Cir. 1994) (agreeing that "lower level officials . . . generally have a stronger interest in personal privacy than do senior officials."); *Vosburgh v. IRS*, 1994 WL 564699, at *4 (D. Or. 1994) ("In general, public disclosure of the identities of low-level employees does not significantly shed light on the activities or operations of the government.").

Further, to the extent that Solers requested information with respect to its own audit, as opposed to general information about the IRS's audit or penalties policies, the IRS, as noted above, released the

names of Revenue Agents Cohen and Sharma.  Employees other than the revenue agents might be subject to unwanted contact (particularly if their contact information were known).  And their privacy interests are not outweighed by the public interest in disclosure, as articulated by Solers.  Indeed, Solers has not asserted that there is any *public* interest in these issues.

In any event, the IRS disclosed to Solers the substance of the two pages at issue.  Solers thus can determine from those documents the method and manner by which penalties may be imposed, the role of the decisionmakers, and the thoroughness of the examination.  The names and contact information of the employees add nothing to the conclusions that Solers (or the public) could draw from this information.

In the same vein, the IRS properly withheld the names and contact information of the employees pursuant to Exemption 7(C).  As discussed above, if the balancing of interests justified withholding of the names and contact information pursuant to the more exacting "clearly unwarranted" invasion of privacy standard of Exemption 6, the IRS *a fortiori* properly withheld this information pursuant to the less demanding privacy protection of Exemption 7(C).

### e.    The checklist properly was redacted pursuant to Exemptions 3, 6 and 7(C)

The IRS also properly redacted the names of third-party taxpayers from the checklist, which was the only information redacted from the checklist.  Their identities were statutorily confidential return information, that clearly was non-disclosable under Exemption 3, in conjunction with I.R.C. § 6103, without regard to balancing privacy versus public interest that is necessary under Exemptions 6 and 7(C). But even assuming that such a balancing were relevant to these names, the District Court correctly determined that their personal privacy interest outweighed public interest in their identities.  The District Court's conclusion that the IRS properly withheld the names of the third-party taxpayers pursuant to Exemptions 6 and 7(C) therefore was correct.

## CONCLUSION

The judgment of the District Court is correct and should be affirmed.

# STATEMENT REGARDING ORAL ARGUMENT

Counsel for the IRS, appellee herein, respectfully request oral argument. The documents that were entirely or partially withheld, and the grounds for the IRS's nondisclosure of this material, are somewhat complicated, and argument may be helpful to the Court.

Respectfully submitted,

CAROLINE D. CIRAOLO
  *Acting Assistant Attorney General*

/s/ Gretchen M. Wolfinger

JONATHAN S. COHEN          (202) 514-2970
GRETCHEN M. WOLFINGER      (202) 616-7611
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*
  Gretchen.M.Wolfinger@usdoj.gov
  Appellate.Taxcivil@usdoj.gov

*Of Counsel:*

DANA BOENTE
  *United States Attorney*

August 2015

13028254.1

-47-

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No.  15-1608        Caption:  Solers, Inc. v. IRS

## CERTIFICATE OF COMPLIANCE

## WITH RULE 28.1(e) or 32(a)

Certificate of Compliance With Type-Volume Limitation, Typeface
Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App.
P. 28.1(e)(2) or 32(a)(7)(B) because:

*[Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not
exceed 14,000 words or 1,300 lines; Appellee's Opening/Response Brief may not exceed 16,500 words
or 1,500 lines; any Reply or Amicus Brief may not exceed 7,000 words or 650 lines; line count may be
used only with monospaced type]*

   [X]   this brief contains  8,788   words, excluding the parts of the
         brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]   this brief uses a monospaced typeface and contains [*state the
         number of*] lines of text, excluding the parts of the brief
         exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App.
P. 32(a)(5) and the type style requirements of Fed. R. App. P.
32(a)(6) because:

*[14-point font must be used with proportional typeface, such as Times New Roman or CG Times; 12-
point font must be used with monospaced typeface, such as Courier or Courier New]*

   [X]   this brief has been prepared in a proportionally spaced
         typeface using Microsoft Word 2010 in 14-point Century
         Schoolbook; *or*

   [ ]   this brief has been prepared in a monospace typeface using
         [*state name and version of word processing program*] with
         [*state number of characters per inch and name of type style*].

(s)  Gretchen M. Wolfinger
Attorney for Internal Revenue Service
Dated:  August 28, 2015

13028254.1

# CERTIFICATE OF SERVICE

It is hereby certified that, on this 28th day of August, 2015, this brief was filed with the Clerk of the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system and that 8 paper copies were sent to the Clerk by First Class Mail.  Service on counsel for the appellant was made via the CM/ECF system.

I further certify that on this 28th day of August, 2013, I also have mailed the foregoing brief by first-class mail, postage prepaid, to counsel for appellant, addressed as follows:

> Robert J. Cunningham, Jr.
> Mariam W. Tadros, Esq.
> Rees Broome, PC
> 1900 Gallows Road, Suite 700
> Tysons Corner, Virginia   22182

>                           /s/ Gretchen M. Wolfinger
>                           GRETCHEN M. WOLFINGER
>                           *Attorney*

13028254.1